## CASES ARGUED AND DECIDED IN THE SUPREME COURT OF LOUISIANA

AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1926
AND
AT TERM BEGINNING FIRST MONDAY OF OCTOBER, 1927.

(113 So. 658)

No. 26188.

RIZZOTTO et al. v. GRIMA et al.

May 23, 1927.

*(Syllabus by Editorial Staff.)*

1. Aliens ⬅13—Italian subjects are entitled to same treatment respecting their realty in United States as subjects of Great Britain.

Under most favored nation clause of Treaty of 1871 between Italy and the United States (17 Stat. 845, art. 22, cl. 2), Italian subjects are entitled to same treatment concerning their realty in United States as is accorded subjects of Great Britain, under Convention of 1899 between Great Britain and the United States, art. 3 (31 Stat. 1940).

2. Aliens ⬅13—Nearest Italian consul is entitled to recognition as representative of deceased Italian subject's heirs on intervening in succession proceedings (Const. U. S. art. 6).

Treaty being supreme law of land, binding all courts, under Const. U. S. art. 6, Italian consul nearest domicile of deceased Italian sub-

ject and situs of his property was his heirs' agent, under most favored nation clause of Treaty with Italy 1871 (17 Stat. 845, art. 22, cl. 2), to extent, at least, that he would have been entitled to recognition by court as their representative, had he intervened in succession proceedings, though article 16 of Consular Convention of 1878 with Italy (20 Stat. 732), omits provision of Convention of 1899 with Great Britain (31 Stat. 1940, art. 3) as to such right.

3. Executors and administrators ⬅29(4)— Succession; appointment of court clerk as administrator of small heavily indebted estate without notifying consul of decedent's country held not absolute nullity (Act No. 153 of 1900).

Appointment of court clerk as administrator of heavily indebted small estate of deceased Italian subject, under Act No. 153 of 1900, after due public notice of application and expiration of legal delays without opposition, was not absolute nullity, but fixed his right to office, at least quoad parties dealing with him in such capacity, though nearest Italian consul was not notified, as provided by Consular Convention of 1878 with Italy, art. 16 (20 Stat. 732).

**4. Aliens ⬤➾13—Notice to consul of Italian citizen's death, without known heirs or testamentary executor, held not equivalent to "citation."**

Notice to Italian consul of death of Italian citizen without known heirs or testamentary executor, under Consular Convention of 1878 with Italy, art. 16 (20 Stat. 732), is not equivalent to "citation" issued out of court of competent jurisdiction demanding consul to appear on day named, and do, or show cause for not doing, something therein mentioned.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Citation.]

**5. Aliens ⬤➾13—Treaty provision for notifying Italian consul of Italian citizen's death held not intended to put Italian citizens on more favorable footing than United States citizens.**

Clause in Consular Convention of 1878 with Italy (20 Stat. 732, art. 16), that Italian consul shall be given notice of Italian citizen's death without known heirs or testamentary executor, was designed merely to establish method for advising citizens of Italy of their potential rights in estate, not to put them on more favorable footing than United States citizens or exempt them from ordinary defenses.

**6. Executors and administrators ⬤➾29(1)—Succession; illegal appointment of administrator does not render invalid acts done thereunder.**

Acts done under appointment of administrator are valid, even if appointment was illegal.

**7. Executors and administrators ⬤➾376—Succession; title of purchaser at sale to pay debts of succession cannot be attacked by minor heirs on ground that succession owed none.**

Purchaser at succession sale is protected, in absence of fraud, by decree of court vested with jurisdiction, directing sale to pay debts of succession, and his title cannot be attacked by minor heirs on ground that succession owed no debts, and that administration was unnecessary, especially where their interest is purely residuary and residue is practically nil.

**8. Executors and administrators ⬤➾386—Succession; heirs of decedent, to payment of whose debts property was applied, were not injured by administrator's sale thereof.**

Where property sold to pay debts of succession was properly applied thereto, decedent's heirs suffered no injury by sale.

**9. Executors and administrators ⬤➾29(4)—Succession; failure to notify consul of foreign subject's death held irregularity or informality cured by lapse of five years (Civ. Code, art. 3543).**

Failure to notify Italian consul of Italian citizen's death without known heirs or testamentary executor, pursuant to Consular Convention of 1878 with Italy, art. 16 (20 Stat. 732), held mere irregularity or informality, cured by lapse of five years, under Civ. Code, art. 3543.

**10. Executors and administrators ⬤➾360—Succession; sale of property of succession by sheriff, instead of administrator, held not null.**

Probate sale held not null, because made by sheriff, instead of administrator; purpose of statute authorizing administrator to sell property of succession being to save costs, not to invalidate sale by duly authorized auctioneer.

**11. Executors and administrators ⬤➾401—Succession; administrator is chargeable with excessive costs incurred in selling property of succession.**

Any excessive costs incurred by administrator in selling property of succession are chargeable to him, and he can be made to reimburse such excess to succession.

**12. Executors and administrators ⬤➾362—Succession; sale to pay debts of succession, as directed by court order, held not invalid, because advertisement announced sale for partition.**

That advertisement, as recited by procès verbal, announced that sale of property of succession would be for purpose of partition, did not invalidate sale for cash after usual delays, in accordance with court order directing sale to pay debts of succession.

**13. Executors and administrators ⬤➾378—Succession; sale by sheriff and advertisement of sale for partition, instead of payment of debts, held informalities cured by five years' prescription (Civ. Code, art. 3543).**

Sale of property of succession by sheriff, instead of administrator, and announcement in advertisement that sale would be for purpose of partition, held mere informalities cured by five years' prescription, under Civ. Code, art. 3543.

**14. Constitutional law ⬤➾46(1)—Constitutionality of statutory provisions authorizing partition of property need not be considered, where property was sold to pay debts of succession (Act No. 153 of 1900, §§ 5, 6).**

Whether Act No. 153 of 1900, §§ 5, 6, are constitutional, so far as authorizing partition

of property subject to provisions of statute, need not be considered, where property involved was sold to pay debts of succession.

Land, J., dissenting.

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Action by Stefferner Rizzotto and another against George Grima and others. From a judgment of dismissal, plaintiffs appeal. Affirmed.

F. E. Delahoussaye and Weeks & Weeks, all of New Iberia, for appellants.

Burke & Smith, of New Iberia, for appellees.

ROGERS, J. Bernardo Rizzotto, a citizen of Italy, died intestate at his residence in the parish of Iberia in the year 1903. Surviving him were a widow, Frangeska Conzonella Rizzotto, and two minor children living in Italy. At the time of his death, the deceased owned a small tract of land situated in the parish of Iberia. This property, which was burdened with a mortgage of $100, had been sold for taxes. The succession of the de cujus was opened July 24, 1923, by the clerk of court, who applied to be appointed administrator thereof under the provisions of Act 153 of 1900, providing a method for administering estates of a value less than $500. In his application to the court, the tract of land was valued at $300. Upon the allegation that there "are no heirs residing in this state, but that it is reported that there are heirs living in Italy," an attorney to represent said heirs was appointed. After the advertisement and notice required by law had been given, and no opposition having been made thereto, the court granted the application of the clerk of court, who duly qualified as the administrator of the succession. The administrator redeemed the property from the tax purchasers, borrowing the money, $25.50, for the purpose from a bank in the town of Jeanerette. On September 12, 1903, he obtained an order of court to sell the property, which was the only asset of the succession, to pay the debts. The sale was made in due course at public auction by the sheriff of the parish to whom the order had been directed. At this sale the property was adjudicated to Leonardo Sacco and Leonardo Lombardo for the sum of $301 cash. The administrator then filed his account, which was duly approved by the court contradictorily with the attorney for absent heirs. On the homologation of the account, one Tony Conzonella, a brother of the surviving widow, was a witness, and the court ordered the balance due, $48.25, after payment of the debts, be delivered to the attorney for absent heirs for account of the two children of the deceased. The administrator was discharged on March 24, 1904.

On July 24, 1922, the present suit was filed by the surviving widow, and one of the children of the de cujus, the other child having died intestate and without issue in the meantime, to recover the tract of land in question, now valued at $4,000, and also the sum of $830, alleged to be the amount of the revenues derived therefrom under an oil lease entered into in the year 1918, and long since expired. The defendants hold title to the land by mesne conveyances from the original adjudicatees at the succession sale.

Plaintiffs allege that the succession proceedings are null and the sale made therein is void, because the Italian consul, as the representative and agent of the widow and heirs, was not notified of the death of the de cujus as provided in our treaty with Italy; that the administrator was without right to cause the property to be sold by the sheriff; and that there was no authority to sell it to effect a partition. In a supplemental petition, plaintiffs aver that sections 5 and 6 of Act 153 of 1900 are violative of article 31 of

the state Constitution of 1898, and of the Fourteenth Amendment of the federal Constitution.

Defendants excepted to the petition on the ground that the property therein described was regularly sold by an officer authorized to sell at public auction, and under judgment of court of competent jurisdiction; that the sale was regular in all its details, and, having occurred more than five years prior to the institution of the suit, the claim of the plaintiffs is prescribed.

The exception was maintained and plaintiffs' action dismissed. The present appeal is from this judgment.

[1] Article 22 of the Treaty of 1871 between Italy and the United States (17 Stat. 845) contains two clauses, the first of which relates to the rights of the citizens of the respective contracting parties to dispose of their personal effects, and the second of which deals with their real estate. The latter clause reads as follows, viz.:

"As for the case of real estate, the citizens and subjects of the two contracting parties shall be treated on the footing of the most favored nation."

The Consular Convention of 1878 between the two countries contains a stipulation (article 16) in these words, viz.:

"In case of the death of a citizen of the United States in Italy, or of an Italian citizen in the United States, who has no known heir, or testamentary executor designated by him, the competent local authorities shall give notice of the fact to the consuls or consular agents of the nation to which the deceased belongs, to the end that information may be at once transmitted to the parties interested." 20 Stat. 732.

The provision in the Convention of 1899 between Great Britain and the United States upon the same subject-matter is more specific and contains an additional right. Article 3 of the Convention is as follows:

"In case of the death of any citizen of the United States of America in the United Kingdom of Great Britain and Ireland, or of any subject of her Britannic majesty in the United States, without having in the country of his decease any known heirs or testamentary executors by him appointed, the competent local authorities shall at once inform the nearest consular officer of the nation to which the deceased person belonged of the circumstance, in order that the necessary information may be immediately forwarded to persons interested.

"The said consular officer shall have the right to appear personally or by delegate in all proceedings on behalf of the absent heirs or creditors, until they are otherwise represented." 31 Stat. 1940.

It will be observed that under the convention with Italy the notice of death is to be given to the consul only when the deceased "has no known heir, or testamentary executor designated by him;" whereas, under the convention with Great Britain the notice is to be given when the subject or citizen, as the case may be, dies "without having in the country of his decease any known heirs or testamentary executors by him appointed." It is to be noted, further, that the second clause, relative to the right of the consular officer to appear personally or by delegate in all proceedings affecting the absent heirs or creditors, contained in the convention with Great Britain, is omitted from the convention with Italy.

Under the most favored nation clause of the treaty between Italy and the United States (article 22, supra), the subjects of the former nation are entitled to the same treatment concerning their real estate accorded the subjects of Great Britain under the convention between their country and ours. Succession of Rixner, 48 La. Ann. 552, 19 So. 597, 32 L. R. A. 177.

[2, 3] A treaty is by the organic law the supreme law of the land, binding all courts, state and federal. Const. U. S., art. 6. This principle was recognized and applied in the Succession of Rabasse, 47 La. Ann. 1452, 17 So. 867, 49 Am. St. Rep. 433, wherein the court ruled that the effect of the provision of our treaty with France, adopting that in

our treaty with Belgium (which is identical with the clause in our treaty with Great Britain, quoted supra) conferring on the delegate appointed by the French consul authority to represent, until they send their mandates, French citizens, heirs of a succession opened in this state, is to remove the necessity for the appointment of an attorney to represent such heirs. This was the only issue required to be determined, and the court, in its opinion, expressly declared that its decision was confined thereto. Under the ruling in the case, the Italian consul at New Orleans, the nearest consular officer to the domicile of the deceased and where his property was situated, was the agent of plaintiffs (the Italian heirs) to the extent, at least, that he, instead of the attorney actually appointed, would have been entitled to recognition by the court as their representative, had he intervened in the succession proceedings. It may be, also, that he could have successfully opposed the application of the clerk of court to be appointed administrator, obtaining the appointment for himself. But, certainly, the action of the court, seized with jurisdiction of the property of the succession, in appointing the clerk of court as administrator, was not an absolute nullity. The appointment was made after due public notice of the application, after expiration of the legal delays, and no opposition having been made to the application. An administration was necessary in order to remove the property from the grasp of the purchasers at the tax sale and to liquidate the estate which was burdened with debt. In these circumstances, while it might have been proper for some competent authority, although it is not plain upon whom this responsibility rested, to have notified the Italian consul at New Orleans of the death of decedent, in order that he might have forwarded the information to the interested parties, in the event he was able to discover such parties, the situation is in no wise different to what it would have been had the parties appeared, or had he in their behalf appeared, and applied for and obtained the administration of the succession. The suggestion of counsel for appellants that the heirs or the consul, as their representative, might have tendered payment of the debts, and thereby obviated the necessity for the sale, is too fanciful for serious consideration, in view of the fact, as disclosed by the record, that it required, practically, the entire proceeds of the sale to liquidate the debts of the de cujus.

[4, 5] The notice referred to in the treaty to be given to the consul or consular agent of the nation to which the deceased belongs is not, as contended for by appellants, equivalent to a citation. It is not required that it should issue out of a court of competent jurisdiction, commanding the consul or consular agent to appear on a day named and do something therein mentioned, or show cause why he should not. Vide "Citation," Black's Law Dict. That clause in the treaty, whether it can be considered as self-executing or as requiring special legislation to make it operative, is evidently designed merely to establish a method by which citizens of Italy are to be advised of their potential rights in the estates of deceased persons in this country. It was never intended to put them on a more favorable footing than our own citizens, or to exempt them from the ordinary defenses that might be made by the party against whom an action is brought. Cf. La Republique Française v. Saratoga Vichy Spring Co., 191 U. S. 427, 24 S. Ct. 145, 48 L. Ed. 247.

If, at the time the succession of the de cujus was opened, the plaintiffs had been citizens of this country, but residents of another state, and in that sense absentees, with an agent here invested with no greater power or authority than the Italian consul un-

der the treaty, we think the defense urged to the present action would have to prevail. The legal situation is no different because plaintiffs were citizens of a foreign country.

The notice to the consul was not a sine qua non to the appointment of the administrator. The provisions of the treaty merely accorded to him the right to appear personally or by delegate. He was under no necessity of exercising the right. Non constat, that he would have done so, in view of the insignificance of the estate, the burden of its debts, and the inconvenience to which he would have been subjected. And the creditors of the estate were entitled to have an administrator appointed to preserve and conserve their rights.

In the Succession of St. Hubert, 36 La. Ann. 388, the public administrator of the parish of Orleans, alleging the succession to be vacant, was appointed administrator thereof. The heirs at law, who were residents of and present in the parish at the time of the death of the de cujus, appealed from the judgment, supporting their motion of appeal by affidavits reciting the facts. The court refused to set aside the appointment, and failed to remand the case, holding that, as no heirs had presented themselves, or were then known to the court, and no opposition had been made to the administrator's application, the judgment of the district court was sustained by law.

In Heirs of Herriman v. Janney, 31 La. Ann. 276, this court, through Mr. Justice White, afterwards Chief Justice of the Supreme Court of United States, ruled that the failure to appoint an attorney of absent heirs with whom to conduct contradictorily an application for the administration of the succession, will not affect the validity of the appointment of administrator. And the learned author declared, in the course of his opinion, at page 279, that:

"The appointment of Janney [the administrator] by the court fixes his right to the office, at least quoad parties dealing with him as such."

By a parity of reasoning, the failure to notify the consul of the death of the de cujus, to the end that the appointment of the clerk of court as administrator might have been contradictorily conducted with him, does not affect the validity of the appointment. The judgment appointing the administrator fixed his right to the office, at least quoad parties dealing with him in that capacity.

[6] And even if the appointment was illegal, the acts done under it were valid. Webb v. Keller, 39 La. Ann. 55, 1 So. 423; Vinet, Ex'r, v. Bres & Richardson, 48 La. Ann. 1254, 20 So. 695; Succession of Robertson, 49 La. Ann. 80, 21 So. 197.

[7, 8] The purchaser at a succession sale is protected, in the absence of fraud, by the decree of court vested with jurisdiction, directing the sale to pay debts of the succession, and his title is not open to subsequent attack by minor heirs alleging that the succession owed no debts and that an administration was unnecessary. See Thibodaux v. Barrow, 129 La. 395, 56 So. 339, in which the authorities are exhaustively reviewed.

This rule is peculiarly appropriate here, where the interest of the heirs was purely residuary, and where the residue was practically nil. Since the property now claimed by plaintiffs was properly applied to the payment of their ancestor's debts, they suffered no injury by the sale of which they complain. Green v. Baptist Church of Shreveport, 27 La. Ann. 565; Benedict v. Bonnot et al., 39 La. Ann. 972, 3 So. 223.

[9] And, in any event, the failure of some one to give some kind of a notice to the Italian consul of the death of the de cujus, we think, was an irregularity or informality, which has been cured by the lapse of five years. Civ. Code, art. 3543; Fried v. Mar-

rero, 137 La. 778, 69 So. 172, and authorities cited; Abbott v. Pratt, 144 La. 742, 81 So. 296.

[10, 11] Appellants contend that the probate sale is null, because it was made by the sheriff and not by the administrator, and, for the further reason, that, according to the recitals of the procès verbal, the property was sold at a partition sale, although no judgment of partition had been rendered.

The order of the court directed the sheriff to make the sale. He was an officer authorized to make such sales. The purpose of the statute in authorizing the administrator to sell the property of the succession is not to render a sale by a duly authorized auctioneer less valid, but to save costs, which are set forth in the act. Any excess of costs incurred by the administrator are chargeable to him, and he can be made to reimburse such excess to the succession.

[12] The petition for the sale, and the order rendered thereon, were for the sale of the property at public auction by the sheriff to pay debts. The procès verbal recites that the advertisement announced that the sale would be for "purpose of partition." The advertisement itself is not in the record. But conceding that the recital in question shows the true facts, it also shows that the sale was to be made in obedience to the order of court directing that it be made to pay the debts of the succession. It also shows that the proceeds of the sale were not held by the sheriff for partition among the heirs, but were turned over by him to the administrator. The administrator then distributed them to the various creditors in accordance with his final account which was duly homologated by the court.

We do not think the error in the advertisement affected the sale, which was made for cash, after the usual delays, and in accord-

ance with the order of court which announced its purpose.

[13] At most, both of these alleged errors are informalities which are cured by the prescription of five years.

[14] Plaintiffs contend that sections 5 and 6 of Act 153 of 1900 are unconstitutional, in so far as they authorize the partition of property subject to the provisions of the statute. Inasmuch as the property involved here was sold to pay the debts of the succession and not for the purpose of effecting a partition thereof, we find it unnecessary to consider the plea.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of appellants.

LAND, J., dissents.

O'NIELL, C. J. (concurring). I concur in the decree on the ground that the widow and heirs of the deceased were not deprived of any substantial right, or put to any disadvantage, by the failure of the local authorities to notify the Italian consul or consular agent of the death of Bernardo Rizzotto. If the widow or heirs had suffered any disadvantage by the failure of the local authorities to notify the Italian consul or consular agent they would perhaps have the right to set aside the sale which was made of their property without such notification. It is not contended that they could have avoided the sale of the property to pay the debts of the succession, except by paying the debts; and there is no showing that that would have been deemed advantageous or expedient at that time. The succession being in debt, the right of the widow and heirs was, in a sense, only a residuary right or interest in the estate.