180 So.2d 855 (1965)
Leonard BORDELON (Jr.), Plaintiff-Appellant,
v.
Ulysses L. BORDELON et al., Defendants-Appellees.
No. 1565.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1965.
*856 James A. McGraw, and Ben C. Bennett, Jr., Marksville, for plaintiff-appellant.
Dupuy & Dupuy, by Marc Dupuy, Jr., and Charles A. Riddle, Jr., Marksville, for defendants-appellees.
Before TATE, FRUGE, and HOOD, JJ.
TATE, Judge.
The plaintiff, Leonard Bordelon, (Jr.), was born in 1941, after his father had died. By this petitory action, this posthumous child seeks recognition of his one-sixth ownership by inheritance of the property owned by his father at the time he died. The plaintiff's suit was dismissed upon exceptions, and he appeals.
The plaintiff alleges that he was deprived of his inheritance by fraudulent design and certain irregularities in the 1940 succession sale of the entire estate property to his father's three major sons (before he himself was born). Made defendants are the plaintiff's two elder brothers still alive, the heirs of the now-deceased third brother, and also several additional parties who had subsequently purchased from these three original succession-sale purchasers or their assigns.
The principal issue of this appeal is whether this 1963 suit to annul the 1940 *857 succession sale is prescribed under LSA-Civil Code Article 3543 providing a curative prescription as to defects in court-ordered sales.
1. The defendants' exception of prescription under Civil Code Article 3543.
LSA-C.C. Art. 3543 provides that judicial sales may not be attacked for "informalities of legal procedures" after five years from the time of the sale by minors or interdicts, or after only two years by persons not under legal disability.[1] The trial court sustained the defendants' exception of prescription based upon this code article.
The relatively short prescriptive period of this article is provided to create confidence in judicial sales by protecting good faith purchasers from litigation concerning technical irregularities connected with such sales; this prescription is intended to cure only relative nullities (informalities), however, not absolute nullities (matters of substance) which go to the essence of the sale and affect the substantive rights of the parties with interest in the property sold. Phoenix Building and Homestead Ass'n v. Meraux, 189 La. 819, 180 So. 648; Thibodeaux v. Thibodeaux, 112 La. 906, 36 So. 800. The cited decisions note that the matters of substance in making a public sale involve (a) the interested parties being afforded equal opportunities and (b) the property being offered so as to bring as fair a sale price as can be expected under the circumstances. See Comment, Prescription against Defects in Judicial Sales in Louisiana, 13 Tul.L. Rev. 615 (1939).
In the present case, the exception was tried on the face of the pleadings. The plaintiff's petition incorporated by reference the entire 1940 probate proceedings in the succession of Leonard Bordelon (Sr.).
The plaintiff's father, Leonard H. Bordelon (Sr.), died on May 27, 1940. He was survived by his third wife (who was pregnant with the plaintiff at the time), and also by the three major sons of a first marriage and two other heirs then minors. Four days after his father died, the eldest son, Edwin, applied for appointment as administrator of his father's estate. An inventory was taken three days later (June 3, 1940), which appraised 17 items of real estate as well as fairly extensive movable property for a total value of $3,422, and which showed estate debts of $1,775. In August, 1940, the administrator applied to sell all of the remaining succession assets in order to pay the debts of the estate. The court ordered the sale by the sheriff at public auction, with the terms of the sale to be cash and for a price not less than two-thirds of the inventory value of the properties sold.
On September 21, 1940, the immovable property (16 scattered tracts, comprising over 300 acres)[2] was offered and sold in globo. These lands were purchased in globo by the three major heirs of the decedent *858 (Edwin, Ulysses, and Mitchel) for $915. This purchase price was only fifty-eight per cent of the $1,570 inventory value of the property (see inventory at Tr. 108, Items 1 through 6, 8 through 17 of movable property).
In contending that the plaintiff's 1963 suit to annul the 1940 sheriff's sale of the estate property is prescribed, the defendants principally rely upon jurisprudence holding that under LSA-C.C. Art. 3543 a purchaser at a succession sale is ordinarily protected against subsequent claims by minors that the succession sale was unnecessary or invalid on account of irregularities, by the decree of the court vested with jurisdiction ordering the sale to pay the succession debts, Arceneaux v. Cormier, 175 La. 941, 144 So. 722; Rizzotto v. Grima, 164 La. 1, 2, 113 So. 658; Thibodaux v. Barrow, 129 La. 395, 56 So. 339. See also Sun Oil Co. v. Roger, 239 La. 379, 118 So.2d 446. This jurisprudence, however, pertains to invocation of the article's prescription in favor of good faith purchasers at the succession sale.
A. Purchasers in bad faith.
Here, however, under the allegations of the petition the plaintiff's three brothers purchasing at the public sale were not themselves in good faith, for allegedly they had entered into a collusive venture to defraud their coheirs and to sell the entire estate property to themselves for far less than its true value: by having the estate property appraised in the estate inventory at less than one-half of its actual value (Article 11); by purchasing it in globo, knowing that its true value was considerably more than twice the amount for which they bought it (Article 13); by buying in the property for less than two-thirds of its inventory value, which was also at a price less than half of the actual value of the property (Article 12); and by selling in globo the sixteen scattered tracts of real estate[3] in order to discourage competitive bidding (Articles 15 and 17).
The benefit of prescription under LSA-C.C. Art. 3543 is available only to purchasers in good faith. This prescription curing irregularities in a public sale is not available to a purchaser in legal bad faith; in such latter instance, it is immaterial whether the defects are relative or radical nullities because the bad faith purchaser at the succession sale is in neither case shielded by the article's prescription. In re Union Central Life Insurance Co., 208 La. 253, 23 So.2d 63, 72, discussed at 7 La.L.Rev. 238-240 (1947). See also Comment, cited above, at 13 TulL.Rev. 616; Comment, Just Title in the Prescription of Immovables, 15 Tul.L.Rev. 436, 439-440 (1941).
Under the allegations of the present petition, accepted as true here where the exception is tried on the face of the pleadings, the three brothers purchased at the sheriff's sale pursuant to a conspiracy to defraud their coheirs and thus were not purchasers in good faith. Therefore, for present purposes, neither they nor their heirs can invoke the prescription of LSA-C.C. Art. 3543; and, if prescription is not available to prevent nullification of their title founded on the succession sale, then under the allegations accepted as true for present purposes, the sale to them of estate lands is subject to being nullified for their fraudulent conduct in connection with the sale, including their alleged conspiracy to stifle competition and chill the bidding. LSA-C.C. Art. 1847(12); Acadian Production Corp. v. Savanna Corp., 222 La. 617, 63 So.2d 141. See also Konen v. Konen, 165 La. 288, 115 So. 490, cited with approval in Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582, 586, cited below.
*859 The trial court therefore erred in sustaining the exception of prescription filed by the defendants, Ulysses Bordelon, Mitchel Bordelon, and the heirs of Edwin Bordelon, the purchasers of the succession property at the sheriff's sale.
B. Purchasers in good faith.
However, a different question is presented as to the subsequent assigns of these three original purchasers (at least one of whom, Morgan Walker, has filed pleadings and has appeared herein as appellee). These subsequent assigns or purchasers did not, even under the allegations of the petition, participate in the alleged fraudulent scheme. As to them, as good faith subsequent purchasers, the prescription of LSA-C.C. Art. 3543 may prevent attack upon their title acquired through the court-ordered succession sale.
Nevertheless, we have concluded that, under the factual allegations of the petition, a defect of substance is alleged affecting the sheriff's sale with absolute nullity, requiring us to overrule the exception of prescription even as to these good faith subsequent purchasers. As earlier noted, the prescription of Article 3543 cures only informalities (relative nullities), not defects which go to the essence of the judicial sale (absolute nullities), such as the non-payment of the required price. (Placid Oil Company v. A. M. Dupont Corp., 244 La. 1075, 156 So.2d 444, Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582, and Hicks v. Hughes, 223 La. 290, 65 So.2d 603, are among recent decisions which voided as absolute nullities judicial sales held many years earlier.)
The absolute nullity to which we refer is the sale of the succession property not only for less than two-thirds of his appraisementwhich by itself is only a relative nullity, see below, but also under the allegations of the petition for much less than half of the property's true and actual value at the time of the sale (see article 13 of the petition).
As previously noted, the sale of the sixteen tracts of land was made in globo for only fifty-eight per cent of their inventoried value, in violation of the court order authorizing sale of the property for a price not less than two-thirds of its inventory value. The statutory law then applicable likewise provided that succession property could not be sold by public sale at first offering for less than two-thirds of its appraised value. See LSA-C.C. Art. 1170 prior to its repeal by Act 30 of 1960; cf. LSA-C.C.P. Art. 3273 (present law).
Even though succession property has been sold at less than two-thirds of its appraised value, this has been held to be a relative nullity cured by the prescription of Article 3543, provided that the property is at least sold for its actual value, for then neither fraud of nor injury to the previous owner is shown. Arceneaux v. Cormier, 175 La. 941, 144 So. 722. Nevertheless, as this decision recognizes, if in addition to being sold for less than this legally required minimum price, the property is sold for less also than its actual value at the time and under the circumstances, then the succession sale of the property is absolutely null, and this is a defect of substance not cured by the prescription of Article 3543. Huckaby v. Huckaby, 134 La. 107, 63 So. 755; Lacroix v. Crane, 133 La. 227, 62 So. 657; Thibodeaux v. Thibodeaux, 112 La. 906, 36 So. 800; Comment, cited above, at Tul.L. Rev. 619; Note, Sale of Succession Property for Less Than Two-Thirds of its Appraised Value, 7 Tul.L.Rev. 597 (1933).
The present record clearly shows that the immovable property was sold at succession sale for less than two-thirds of its inventory value. The plaintiff's petition additionally alleges that the price so brought was less than one-half of the property's true value. Under the square holding of the cited jurisprudence, an absolute nullity is alleged, requiring us to overrule the defendants' exception of prescription under LSA-C.C. Art. 3543 insofar as based upon the pleadings alone.
*860 In arguing that the exception should be sustained despite the property having been sold for less than the required price, the defendants rely chiefly upon Arceneaux v. Cormier, cited above. This decision, however, recogizes that the succession sale of property for less than two-thirds of its inventory value may be shown to be a radical nullity, if in addition the property is sold for less than its actual value at the time and under the circumstances. The court specifically recognizes the soundness of this general rule. 144 So. 726. Nevertheless, the decision held that the prescription of Article 3543 was applicable as to the sale there under attack, because the court found, on reviewing the evidence, that the property had been sold for full value at the time (even though at less than two-thirds of its appraised value, which appraisal was found to be excessive). 144 So. 724, 726. As a result of such proof, the court held the sale at less than two-thirds of inventory value was merely a relative nullity, being neither in fraud of nor to the prejudice of the heirs. In the present case, it is alleged that, unlike in Arceneaux, the evidence will show that the lands were sold for far below their true value and thus that the public sale, reflected by the public records to have been invalidly made for less than two-thirds of the inventory value, was an absolute nullity.
Insofar as counsel for defendants contends that an open public auction must as a matter of law be sale for full value at the time, we need only point out the jurisprudence previously cited is to the contrary. Huckaby v. Huckaby, Lacroix v. Crane, and Thibodeaux v. Thibodeaux.
We should say at this point that we overrule the exception of prescription under Article 3543 filed by the defendant good faith purchasers, but only insofar as it is based on the pleadings alone. We specifically reserve to them any right to attempt to show at an evidentary hearing that the price received at the succession sale was indeed the actual value at which the property could reasonably be expected to sell at the time. We note, nevertheless, that the inventory prices of the property seem very low indeed even for 1940 (see, e. g., Item 3, 40 acres appraised at $10, Item 14, 25 acres at $50, all 300 acres at $1,570), as does the purchase price of $915 paid at the succession sale for some 300-odd acres including improvements; an observation inferentially supported by the fact that the two town-lots of Item 7, inventoried at $300, were within a month of the inventory sold at private sale for $1,000, or for three times their inventoried value, see Tr. 100-103.
It is probably appropriate to note also that, as held by the trial court, various other defects alleged by the plaintiff were merely relative nullities cured as to good faith purchasers by the prescription of Article 3543. These include: alleged informalities relating to an improper appraisal procedure or under-valuation of the property by the inventory (Thibodaux v. Barrow, 129 La. 395, 56 So. 339; Caldwell v. Hay, La.App 2 Cir., 170 So.2d 194; Tucker v. New Orleans Laundries, Inc., La.App. 4 Cir., 145 So.2d 365, 369); the voidability of the sale as having been produced by a fraudulent conspiracy to defraud the minor heirs (Tucker v. New Orleans Laundries, cited above); the alleged lack of necessity to sell the immovable property to pay the debts of the succession (Rizzotto v. Grima, 164 La. 1, 2, 113 So. 658; Thibodaux v. Barrow, cited above; Caldwell v. Hay, cited above); and the ex parte nature of the proceedings invoking authority of the court to sell the succession property to pay the succession debts, including the failure to make the plaintiff (then unborn) a party to them or to have a tutor appointed to receive notice of the sale with an opportunity to oppose it on behalf of the minor (Sun Oil Company v. Roger, 239 La. 379, 118 So.2d 446; Caldwell v. Hay, cited above).
For the reasons assigned, the exception of prescription under Civil Code Article 3543 is overruled, both as to the three brothers who under the allegations were *861 bad faith purchasers at the sale (or their heirs who stand in their shoes); and also as to both them and their subsequent assigns by good-faith purchase, because of the alleged nullity of the succession sale by reason of the inadequate price shown on the face of the records by the sale for less than two-thirds of the inventory value, together with the allegations that by reason of such defect the sale was an absolute nullity because in addition to the defect of a sale at less than the required minimum the sales price was less than the actual value of the property (such as should reasonably have been received at a fairly conducted succession sale at the time). Other exceptions of prescription filed by the defendants were not passed upon by the trial court and are not before us on this appeal.
2. The defendants' exception of no cause of action.

In addition to sustaining the defendants' plea of prescription under LSA-C.C. Art. 3543 relative to informalities in judicial sales, the trial court also sustained the defendants' exception of no cause of action grounded (a) on the plaintiff's failure to include a specific prayer for annulment of the 1940 succession sale and (b) also on the lack of prejudice to the plaintiff by the irregular sale, since the succession proceedings showed it to be insolvent so that the plaintiff would have received nothing anyway.
As to the latter (b) ground for the exception, the homologation of the final account showed the total proceeds from the sale of estate assets (including items sold at private sale) to be $3,413.86, whereas the debts of the succession (including the costs of administration) amounted to $3,443.40, or approximately thirty dollars more than the assets. Under the allegations of the petition, however, the estate's immovable property was purchased by fraudulent conspiracy for far less than its true value. Accepting these allegations as correct (as we must for purposes of trying an exception of no cause of action), the plaintiff has alleged a cause of action that he was deprived at least of his interest in the surplus-value of the estate after deduction of debts; pretermitting for the present whether attack by an heir upon an absolutely null sale may be barred because the defrauded succession is insolvent, see Rizzotto v. Grima, 164 La. 1, 2, 113 So. 658.
As to the (a) ground for the exception, this is essentially based upon jurisprudence to the effect that a plaintiff in a petitory action seeking recognition of ownership in property can ignore and collaterally attack as invalid only absolutely null judicial sales; but he must first have relatively null sales declared void before he may obtain recognition of his right to property sold by such sale (either through a separate action of nullity or by cumulating the nullity action, with his petitory). Acosta v. Whitney Nat'l. Bank, 214 La. 700, 38 So.2d 391; Bankston v. Owl Bayou Cypress Co., 117 La. 1053, 42 So. 500. Cf., Tucker v. New Orleans Laundries, Inc., La.App. 4 Cir., 145 So.2d 365. As we have previously noted, however, the allegations of the petition adequately attack the present 1940 judicial sale as absolutely null. The cited jurisprudence is therefore not applicable.
Further, we are of the opinion that the allegations of the present petition do adequately seek to annul the 1940 judicial sale, as well as to have recognized the plaintiff's present ownership in the property purportedly sold by it. The petition specifically alleges that the sale was null and void (Article 10) for specified reasons including certain irregularities and fraud (Articles 11 through 17), and it then further alleges that the plaintiff is entitled to his undivided inherited ownership in the property purportedly sold by the described probate proceedings (Article 18). The prayer of the petition prays for recognition of the plaintiff's ownership in the immovable *862 property in question as well as for all general and equitable relief.
We think the obvious intent and effect of these allegations is to pray both for annulment of the succession sale in question (all of the purchasers at the succession sale or their heirs being joined as defendants), both as to the purchasers at the sale and also as to the third parties who purchased from them who are joined in this suit as codefendants. Where the allegations of the petition specifically show that an intended relief is sought, the absence of a specific prayer for such relief in the petition does not prevent the court from granting it. Juneau v. Laborde, 224 La. 672, 70 So.2d 451. See also LSA-C.C.P. Art. 862, which provides that (except as to default judgments): "* * * a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief."
The defendants' exceptions of no cause of action (entitled exception of no cause and right of action) are accordingly overruled.
Decree.
For the reasons assigned, we reverse the judgment of the trial court dismissing the plaintiff's suit upon exceptions; we overrule the exceptions in question; and this suit is remanded for further proceedings not inconsistent with the views herein expressed. The defendants-appellees are to pay all costs of this appeal; all other costs are to await the final termination of these proceedings.
Reversed and remanded.
FRUGE, J., dissents for reasons of trial judge.
NOTES
[1] LSA-C.C. Art. 3543, as last amended in 1960, provides: "All informalities of legal procedure connected with or growing out of any sale at public auction or at private sale of real or personal property made by any sheriff of the Parishes of this State, licensed auctioneer, or other persons authorized by an order of the courts of this State, to sell at public auction or at private sale, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were owners or part owners at the time of making it, and in the event of such ownership or part ownership by said minors in interdicted persons, the prescription thereon shall accrue after five years from the date of public adjudication or private sale thereof."
[2] The 17th tract, Item 7 of the inventory comprising two town lots in Bunkie appraised at $300, was previously sold for $1,000 at private sale pursuant to court authorization.
[3] Although each tract was separately appraised. See former Code of Practice Article 676 (repealed in 1960), as interpreted by Gernon v. Bestick, 15 La.Ann. 697, as requiring lots separately appraised to be sold separately unless otherwise directed by the judgment ordering the sale. Cf. LSA-C.C.P. Art. 2295 (present law).