465 So.2d 914 (1985)
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF WINNFIELD, Plaintiff-Appellee,
v.
Bobby G. BLAKE and Mrs. Pam James Blake, Defendant-Appellant.
No. 16813-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1985.
Rehearing Denied March 27, 1985.
Writ Denied May 31, 1985.
*916 Jack D. Barnett, Shreveport, for defendant-appellant.
Gold, Little, Simon, Weems & Bruser by Donald Sharp, Alexandria, for plaintiff-appellee.
Before MARVIN and SEXTON, JJ., and PRICE, J. Pro Tem.
PRICE, Judge Pro Tem.
Plaintiff, Bobby G. Blake, appeals the judgment of the trial court in favor of defendants, First Federal Savings and Loan Association of Winnfield (hereinafter referred to as First Federal) and Pam James Blake, in his action to nullify a sheriff's sale of real property. We affirm the judgment of the trial court for the following reasons.
From the facts it appears that plaintiff and defendant, Pam Blake, executed a promissory note for $16,000.00 in favor of First Federal on February 4, 1976 to finance the purchase of their family home located in Dunn Subdivision in Winnfield, Louisiana. The note provided for monthly installments commencing on March 4, 1976 in the amount of $144.00. To secure payment on the note, the Blakes granted a mortgage on the property in favor of First Federal. In September, 1977, the Blakes separated and plaintiff moved from the matrimonial domicile. Pam Blake continued to reside in the home with the two minor children of the marriage. On November 18, 1977, pursuant to separation proceedings between the parties, Pam Blake was granted custody of the children and awarded $400.00 per month as alimony pendente lite and child support. The house payment was listed in Pam Blake's affidavit of expenses. Plaintiff remained in Louisiana until approximately March 3, 1978, when he moved to Alaska.
On May 12, 1978, First Federal filed a petition for executory process alleging that the Blakes were more than one payment in arrears and indebted to petitioner in the amount of $15,554.17. First Federal alleged that in the act of mortgage, the Blakes confessed judgment on the note, consented to the seizure and sale of the mortgaged property under executory process if the note was not paid in accordance to its terms, waived the demand for payment prior to the seizure, and waived the benefit of appraisal prior to the judicial sale. First Federal further alleged that plaintiff was an absentee and that an attorney should be appointed to represent him.
The court appointed an attorney to represent plaintiff and a Writ of Seizure and Sale was issued. Notice of Seizure was served on Pam Blake through her attorney, James Womack, and the sheriff's return shows that plaintiff's notice was served on Billie Herd, the secretary of plaintiff's appointed attorney, Charles Bice. From the record it appears that the notice addressed to Pam Blake was served on Billie Herd and the notice addressed to plaintiff was served on James Womack.
The property was advertised and sold at a sheriff's sale on July 5, 1978. The property was purchased by Pam Blake, the highest bidder, for the sum of $5,000.00. From the record, it appears that while the costs of the sale were paid to the sheriff, Pam Blake did not pay the bid price to the sheriff. Rather, Pam Blake executed a mortgage in favor of First Federal. It does not appear from the record that First Federal has proceeded for a deficiency judgment.
On April 14, 1982, plaintiff filed the instant proceeding to declare the sale of the property null and void. Plaintiff alleged that Pam Blake had agreed to make the payments on the home. He further contends that the service of the notice of seizure *917 on both parties was defective and that the price bid was not paid.
At the trial on the merits, plaintiff testified that Pam Blake had agreed to make the payments on the house and he had given the payment book to her. Plaintiff testified that he did not recall receiving the majority of the delinquency notices sent to him by First Federal. Blake testified that he had no knowledge of the seizure until he saw an advertisement in a local paper which he received in Alaska. At that time he contacted Cass Moss, an official of First Federal. Blake testified that Moss told him that the property was to be sold and that bids would be started at $18,000.00. Blake testified that during a telephone conversation with Moss, he requested to pay off the loan and was told that he could not. Blake testified that he had never contacted First Federal prior to the seizure to ascertain the status of the account.
Pam Blake testified that she had never agreed to make the payments on the home when plaintiff gave her the payment book. She also testified that she had attempted to have the plaintiff enter into a property agreement which would have settled the status of the house before he left the state, but the plaintiff refused to sign the agreement. She further testified that she had spoken to plaintiff about possible foreclosure on the home before he moved to Alaska. Pam Blake only had temporary part-time employment and testified that her income was simply not sufficient to meet her expenses.
Cass Moss, an official of First Federal, testified that the Blake's account became delinquent approximately in January, 1978, and that letters notifying the Blakes of the delinquencies were mailed to them at different addresses. Moss testified that at the time of the sale there was an understanding between First Federal and Pam Blake that she would bid for the property and that First Federal would finance the purchase. Moss stated that he did not recall plaintiff's request to pay off the loan. Moss testified that the obligation was considered to be satisfied after the sheriff's sale and the signing of the subsequent notes.
Vera Smith, a civil deputy with the Winn Parish Sheriff's Department, testified that the only payments received by the sheriff's office as a result of the sale totalled $316.00, representing the amount of costs. Smith testified that it was not unusual procedure for the sheriff to collect only the costs and to allow the parties to handle the obligation directly between themselves as it relieved the sheriff of the responsibility of collecting that amount and eliminated a bookkeeping step.
After reviewing the evidence, the trial court denied plaintiff's demands. The court found that the notices of seizure were pre-printed forms containing blank spaces for pertinent information. By inadvertence, the notices were not served to the party to which it was addressed, but rather the notices were crossed. However, each notice contained all the necessary information relating to the seizure and sale. The court noted that Pam Blake had full knowledge of the pending sale and that any irregularity as to service on her was cured by her participation in the sale. Furthermore, the irregularities of service were informalities which prescribed after a lapse of two years from the sale. The court found that plaintiff's claim that Pam Blake had agreed to pay the house payments was without merit. Although the payment was listed in the affidavit of expenses, the court noted that there was no judicial order directing Pam Blake to make the payments and further, plaintiff did not timely pay the alimony pendente lite and child support. The court determined that while technically the price bid to the sheriff was not paid, that plaintiff, who knew of the delinquent account and impending sale, did not sustain any damage by the manner which was used.
On appeal the plaintiff asserts the following assignments of error:
1. The trial court erred in determining the service of the notices of seizure was valid and any irregularity of service *918 was an informality which was cured by prescription.
2. The trial court erred in finding plaintiff did not sustain any damage as a result of the price bid not being paid to the sheriff and further, in determining that apparently a showing of damage would be necessary to invalidate the executory process.
3. The trial court erred in not finding both First Federal and Pam Blake to be in bad faith and further in not finding that the legal obligations owed by Pam Blake and First Federal to plaintiff were sufficient to prohibit their concerted action to deprive plaintiff of his ownership interest in the property.
Executory proceedings in this state are actions "... in rem by the holder of a mortgage or privilege evidenced by an authentic act importing a confession of judgment to effect the seizure and sale of the encumbered property.... It is a civil law remedy, having no counterpart in the common law. Its procedural bases are the debtor's confession of judgment ... supporting authentic evidence; and a determination by a judge that the submissions are adequate for the seizure and sale of the encumbered property to satisfy the debt." Buckner v. Carmack, 272 So.2d 326 (La. 1973) at p. 329. Executory proceedings provide "... a simple, expeditious, and inexpensive procedure by which creditors may seize and sell property upon which they enjoy a mortgage or privilege." Reed v. Meaux, 292 So.2d 557 (La.1973) at p. 559, and citations therein.
It is well-settled that executory process is a harsh remedy and may only be used when specifically authorized by law. The party employing executory process must strictly comply with the statutory requirements. See Credithrift of America, Inc. v. Williams, 426 So.2d 339 (La.App. 2d Cir.1983), First Guar. Bank v. Ratcliff, 424 So.2d 289 (La.App. 1st Cir.1982), Neff v. Ford Motor Credit Co., 347 So.2d 1228 (La.App. 1st Cir.1977), Commercial Credit Corp. v. Nolan, 385 So.2d 1246 (La.App. 3d Cir.1980), Federal Nat. Mortg. Ass'n. v. O'Donnell, 446 So.2d 395 (La.App. 5th Cir. 1984), and numerous citations therein.
Former LSA-C.C. Art. 3543 now redesignated as LSA-R.S. 9:5622, provides as follows:
All informalities of legal procedure connected with or growing out of any sale at public auction or at private sale of real or personal property made by any sheriff of the Parishes of the State, licensed auctioneer, or other persons authorized by an order of the courts of this State, to sell at public auction or at private sale, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, except where minors or interdicted persons were owners or part owners at the time of making it, and in the event of such ownership or part ownership by said minors or interdicted persons, the prescription thereon shall accrue after five years from the date of public adjudication or private sale thereof.
The "relatively short prescriptive period of this article is provided to create confidence in judicial sales by protecting good faith purchasers from litigation concerning technical irregularities connected with such sales; this prescription is intended to cure only relative nullities (informalities), however, not absolute nullities (matters of substance) which go to the essence of the sale and affect the substantive rights of the parties with interest in the property sold." Bordelon v. Bordelon, 180 So.2d 855 (La.App. 3d Cir.1965) at p. 857 and citations therein. This prescriptive period only benefits purchasers in good faith and is not available to purchasers in legal bad faith. Bordelon v. Bordelon, supra.

NOTICE OF SEIZURE
LSA-C.C.P. Art. 2721 provides in part that "(t)he sheriff shall serve upon the defendant a written notice of the seizure of the property." Service under this article is mandatory and may not be waived. General *919 Motors Acceptance Corp. v. Henderson, 228 So.2d 323 (La.App. 3d Cir.1969). LSA-C.C.P. Art. 2674 provides in part:
The court shall appoint an attorney at law to represent the unrepresented defendant in an executory proceeding under the following circumstances:
(1) When the defendant is an absentee....
LSA-C.C.P. Art. 2641 states that "(i)n all cases governed by Article 2674, all demands, notices and other documents required to be served upon the defendant in an executory proceeding shall be served upon the attorney at law appointed by the court to represent him, against whom the seizure and sale shall be prosecuted contradictorily." The statutory requirement of service must be complied with even though the debtor may have actual knowledge of the seizure. See Bank of New Orleans & Trust Co. v. Brule, 389 So.2d 1148 (La. App. 4th Cir.1980).
It is clear after a review of the pertinent law and the facts of the instant proceeding that the trial court did not err in holding that there was compliance with the service requirement, and irregularities of service, if any, were cured by the operation of prescription.
The plaintiff was alleged to be an absentee and an attorney was properly appointed to represent him. Service of the notice of seizure was made on the secretary of plaintiff's attorney and the attorney promptly contacted the plaintiff in Alaska, informing him of the impending sale of the property.
Although the service of the notice of seizure addressed to Pam Blake was served on Billie Herd, secretary to plaintiff's attorney, and service of the notice of seizure addressed to plaintiff was served on Pam Blake's attorney, this does not appear to be defective service which would fail to meet the mandatory requirements of LSA-C.C.P. Art. 2721.
As noted by the trial court, the notices, typed on pre-printed forms, were identical with the exception of the salutation. Both notices contained all of the pertinent information as to the seizure and sale. In fact, the salutation is more in the nature of surplus language in the notice. The fact that service was not made directly on plaintiff's attorney, but rather accepted by the secretary, appears to be inconsequential as plaintiff was promptly and properly notified by the attorney.
Assuming that incorrect salutation and service upon the secretary were found to be irregularities of service, the trial court did not err in finding these to be informalities which would be cured by prescription under LSA-R.S. 9:5622 as more than two years had passed from the date of the sale to the date the instant action was commenced. These irregularities are not absolute nullities which affect the substantive rights of the parties but rather are procedural or technical defects. Further, any claims of irregularities in service as to Pam Blake were effectively waived by her subsequent participation and bidding in the sheriff's sale.

PAYMENT OF THE PRICE BID
Plaintiff argues that under LSA-C.C.P. Art. 2375, Pam Blake, as the purchaser of the property, was required to pay the price bid at the sale to the sheriff and her failure to do so should act to nullify the sheriff's sale.
As noted previously, the costs of the sale were paid and the payment of the purchase price was handled directly between Pam Blake and First Federal. At the trial, there was testimony by Cass Moss, an official of First Federal, that the obligation was considered to be satisfied after the sale. Vera Smith testified that allowing the parties to handle the obligation between themselves was not unusual procedure in the sheriff's department. An examination of LSA-C.C.P. Art. 2375 compels the conclusion that plaintiff's argument is without merit. The article states in part that the purchaser "... shall pay the full purchase price to the sheriff, despite the existence of a mortgage, lien, or privilege on the property inferior to that of the seizing creditor." A reading of the comments *920 to the article reveals the intent behind the article. The comments note that under the old Code of Practice, the purchaser paid only the costs and claim of the seizing creditor, retaining the balance for payment of the inferior claimants. The purchaser was also allowed to provoke a rule to refer the inferior claimants to the proceeds and thus obtain a cancellation of the inferior mortgages. LSA-C.C.P. Arts. 2375-2377 were enacted to introduce a new system of dealing with inferior mortgages in that they shift the burden of distributing the proceeds to the sheriff and give the purchaser a clear title in all cases.
It is clear that the article was designed primarily for the protection of the purchaser from claims of holders of inferior liens and to provide immediate clear title to the property. It is apparent that the intent of the law was to shift the cumbersome duty of settling the inferior claims to the property from the purchaser to the sheriff, thus the requirement that the funds be fully paid to the sheriff rather than being retained by the purchaser. However, in a case such as this, when the seizing creditor is the only secured creditor and there are no inferior claimants, there is no practical reason that the price bid should be paid to the sheriff in order to effect a valid sale and to obtain clear title to the property.
Plaintiff cites several cases supporting his argument that failure to pay the purchase price nullifies a sheriff's sale, particularly Deshotels v. Deshotels, 427 So.2d 20 (La.App. 3d Cir.1983) and Placid Oil Company v. A.M. DuPont Corporation, 244 La. 1075, 156 So.2d 444 (1963). These cases are distinguishable in that it appears in each case, there was no evidence that there had been payment of the price which acted to cancel the claims of the creditors.
The trial court did not err in finding that plaintiff did not sustain any damage as a result of the manner of payment used. It appears that if this method is considered to be an irregularity, it would be procedural rather than substantive and thus cured by prescription.

ALLEGED COLLUSION OF PAM BLAKE AND FIRST FEDERAL
Plaintiff essentially argues that Pam Blake and First Federal were in bad faith and acted together to deprive plaintiff of his ownership interest in the home. There is no evidence in the record which shows that either Pam Blake or First Federal were in bad faith or acted in concert to deprive plaintiff of his interest in the home. As the trial court noted, plaintiff was properly notified and fully apprised of the seizure and impending sale. The fact that Pam Blake purchased the property with financing by First Federal does not mandate a finding that the parties were in bad faith or acted collusively to plaintiff's detriment.
Further, without commenting on the legal implication of an alleged agreement between co-owners as to payment of the installments due on the note in an action to nullify a sheriff's sale, there is no evidence in the record to establish that Pam Blake had agreed to individually pay the house payments and was acting in bad faith in her failure to do so.
For these reasons, the judgment of the trial court in favor of Pam Blake and First Federal Savings and Loan Association of Winnfield is affirmed at plaintiff's, Bobby G. Blake's, costs.
AFFIRMED.