JEROME WINDER
v.
INEZ GEORGE, ELNORA HARRIS, HOBART PARDUE, JR., ASHTON DEVAN PARDUE, XYZ INSURANCE CO., AND HCL ENTERPRISES, INC.
No. 2007 CA 0314.
Court of Appeals of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
AL M. THOMPSON, Counsel for Plaintiff/Appellee, Jerome Winder.
PETER D. COLEMAN, Counsel for Defendants/Appellants Peter D. Coleman and Ralston Cole.
JAMES A. DUKES, Counsel for Defendant/Appellee, Hobart O. Pardue, Jr.
MARK S. GOBER, Counsel for Defendant/Appellee, HCL Enterprises, Inc.
Before GAIDRY, McDONALD, and McCLENDON, JJ.
GAIDRY, J.
An heir of deceased owners of immovable property in Livingston Parish filed suit to rescind or annul a sale of the property by the owners' successions, cumulated with an action for damages against the succession administrator, another purported heir under the succession, their attorney, and two subsequent, consecutive purchasers of the property described in the succession. Two earlier purchasers of the same property, under a quitclaim deed from a different seller, were later joined as additional defendants in a cumulated petitory or declaratory judgment action. In a combined judgment dispositive of numerous exceptions and motions, the trial court sustained a peremptory exception of no cause of action and prescription, dismissing the plaintiff heir's action against the last purchaser of the property. The trial court also dismissed the first purchaser of the property on a purported peremptory exception of no cause of action. Finally, the trial court sustained peremptory exceptions of prescription, dismissing the action as against the purported heir and the succession administrator. The earlier purchasers with conflicting title now appeal. For the following reasons, we affirm and amend the judgment in part, reverse it in all other respects, and remand the matter for further proceedings.

FACTS AND PRIOR PROCEEDINGS
The plaintiff, Jerome Winder, is a great-grandson and heir of William Winder, Sr., who died intestate in 1932. William Winder, Sr. and his wife, Rachel Caleb, had six children, one of whom was Eric Winder, the plaintiff's grandfather. At the time of his death, William Winder, Sr. owned a tract of land measuring about 7.5 acres in Livingston Parish. One of his children, Arnette Winder, owned a tract measuring approximately 10 acres, adjoining that of her father. Both tracts were originally parts of a larger tract generally known as the Carter Plantation. The tracts are presently adjacent to a residential resort and golf community development also known as "Carter Plantation." Dispute over the ownership of those two tracts constitutes the basis of the claims asserted in this litigation.
Arnette Winder died in 1960, leaving no spouse or children, and her succession was opened in 1961. A judgment of possession was signed on May 5, 1961, placing Ms. Winder's heirs, her four surviving siblings and her two nephews, the sons of her brother Eric Winder, in possession of her property, including her 10-acre tract and her undivided interest in her father's 7.5-acre tract.
The succession of William Winder, Sr. was not opened until August 13, 1998, when a petition to appoint a succession administrator was filed in the trial court by the defendant, Elnora Harris, the daughter of the defendant, Inez George. The petition alleged that Inez George was one of Eric Winder's three children, and was supported by an affidavit of death and heirship signed by Otis Richardson and W. W. Threeton, verifying that fact. The petition also sought to open the successions of Rachel Caleb Winder, William Winder, Sr.'s wife; four of the couple's six children (excluding Arnette Winder and Eric Winder, the only child with living descendants); three of their grandchildren; and one great-grandchild. The defendant, Hobart O. Pardue, Jr., signed the petition as attorney for Ms. Harris. The defendant, DeVan Pardue, Hobart Pardue's son and law partner, executed the administrator's bond as surety.
On the same date that Ms. Harris filed the foregoing petition, her mother, Ms. George, filed an amended petition for possession in the closed succession of Arnette Winder. In her amended petition, Ms. George alleged that she was the illegitimate daughter of Eric Winder and Helen Terrell. With her amended petition, she filed an "amended" affidavit of death and heirship, signed by Messrs. Richardson and Threeton, the affiants in the affidavit filed in the other succession proceeding. The affiants supposedly verified Ms. George's status as Eric Winder's daughter. The amended petition for possession was signed by Hobart Pardue as Ms. George's attorney.
On August 13, 1998, an amended judgment of possession was signed in the reopened succession of Arnette Winder, recognizing Ms. George as an heir of Eric Winder and Annette Winder, and purporting to place her and her deceased brothers, Charles Winder, Sr. and Lionel Winder (the plaintiffs father), in possession of undivided 7% (1/15) interests in Annette Winder's property. On the same date, Ms. Harris filed a detailed descriptive list of the property in the succession of William Winder, Sr. and the other listed decedents, consisting only of the two tracts at issue, with a fair market value of $15,000.00 total.
On August 21, 1998, Ms. Harris filed an application in the succession of William Winder, Sr. and the other decedents to sell the two tracts at issue to DeVan Pardue for the sum of $15,000.00, on the stated grounds that the proposed private sale was "in the best interest of the succession and the administration of the property," since "[t]he property cannot be divided." Following the advertisement of the application to sell the property, the trial court authorized the private sale of the two tracts to DeVan Pardue by judgment signed on December 17, 1998.
On February 26, 1999, the "Estate of William Winder," through Ms. Harris, sold both tracts at issue to DeVan Pardue for the sum of $15,000.00.[1]
On April 22, 1999, Hobart Pardue wrote to the plaintiff and his brother, Eris Winder (the Lionel Winder heirs) advising them of the sale of the succession property and enclosing a copy of the final accounting and the proposed petition for possession. In response to a telephone call from one of the heirs (presumably Danny M. Winder of Reno, Nevada), Mr. Pardue wrote another letter to the other heirs (the Charles Winder, Sr. heirs) on April 29, 1999, enclosing certain succession pleadings, representing that the property was worth about $1,000.00 per acre, and advising them that each would be receiving $554.18 from the distribution of the sale of the succession property.
On July 24, 2003, DeVan Pardue sold the two tracts at issue to HCL Enterprises, Inc. (HCL), represented by its president, Loretta Pardue, for the sum of $15,000.00.
On July 25, 2003, Peter D. Coleman and Ralston P. Cole (Coleman and Cole) filed a petition for declaratory judgment against DeVan Pardue, claiming that they were in possession of the property at issue and seeking judgment declaring the private sale to DeVan Pardue to be a nullity and declaring them owners of the property. That separate litigation proceeded to judgment on October 20, 2004, when the trial court ruled in favor of DeVan Pardue, declaring him the owner of the property and dismissing Coleman and Cole's petition. Coleman and Cole filed a motion for new trial and a peremptory exception of nonjoinder of parties needed for just adjudication. One of those parties claimed to be a necessary party was the plaintiff in this matter, Jerome Winder, who also sought to intervene in that matter to assert his ownership rights. The trial court denied the motion, overruled the exception, and refused to grant leave for Mr. Winder to intervene. Coleman and Cole appealed. In an unpublished opinion, we reversed the trial court's judgment and remanded the matter for a new trial.[2]
The plaintiff instituted the present litigation on January 18, 2005. Named as defendants were Ms. George, Ms. Harris, Hobart Pardue, DeVan Pardue, and HCL. In addition to detailed recitation of the underlying facts and family relationships, he challenged the truth and authenticity of the affidavits of death and heirship filed by Ms. Harris and Ms. George in the succession proceedings, and alleged other substantive and procedural irregularities in those proceedings. He alleged unethical conduct and breach of fiduciary duties on the part of the Pardues and breach of fiduciary duties by Ms. George and Ms. Harris in naming Ms. George as an heir and in undervaluing the property sold to DeVan Pardue. He prayed for the damages, as well as the "rescinding" of the two sales of the property and recognition of his and the other legitimate heirs'"ownership rights" in the two described tracts, of which HCL was owner of record.
On March 4, 2005, Ms. George filed a peremptory exception of nonjoinder of parties, claiming that Coleman and Cole, as adverse claimants, were parties needed for just adjudication of the plaintiffs claims to ownership of the property at issue. On April 4, 2005, DeVan Pardue filed a similar exception on the same grounds.
On April 7, 2005, Hobart Pardue filed peremptory exceptions of prescription and res judicata and a declinatory exception of lis pendens.
On April 8, 2005, Ms. Harris filed a peremptory exception of prescription, asserting that any claim against her was prescribed under the two-year prescriptive period of La. R.S. 9:5621. Ms. George filed a peremptory exception of prescription on April 11, 2005, asserting that any claim against her was prescribed under the two-year prescription of La. R.S. 9:5622.
On April 14, 2005, HCL filed a peremptory exception of no cause of action, on the grounds that the petition failed to set forth any act of negligence or other factual basis for its alleged liability to the plaintiff. On April 18, 2005, HCL filed another peremptory exception, reasserting its earlier objection of no cause of action and asserting the objection of prescription, on the grounds that any cause of action that may have been asserted was prescribed under La. R.S. 9:5622.
Various other motions were filed by the parties, including cross-motions for sanctions. All of the pending exceptions and motions were eventually heard by the trial court on January 30, 2006. Evidence was introduced, including the plaintiff's deposition and the entire record of the prior action. At the conclusion of the hearing, the trial court took all of the matters under advisement. On May 31, 2006, the trial court filed and issued its written reasons for judgment on the various exceptions and motions.
The trial court's original judgment, incorporating its rulings on the various exceptions and motions, was prepared and submitted to the court by Hobart Pardue's counsel and signed on July 17, 2006. The trial court overruled the peremptory exceptions of nonjoinder of parties, noting that all necessary parties had been joined.[3] The trial court sustained HCL's peremptory exception on both of its grounds, and dismissed HCL as a defendant. The trial court also sustained a purported peremptory exception of no cause of action filed by DeVan Pardue, and dismissed him as a defendant. The peremptory exceptions of Ms. George and Ms. Harris were sustained, dismissing them as defendants. All other exceptions were overruled, and all motions were denied. On July 26, 2006, another judgment on the same exceptions and motions was signed by the trial after being submitted by Coleman and Cole's counsel. This second judgment differed from the first in that it did not provide for DeVan Pardue's dismissal.[4]
On July 28, 2006, Coleman and Cole filed a petition for a devolutive appeal of the judgment of July 17, 2006. On July 31, 2006, the plaintiff filed a motion for new trial. The trial court signed the order granting Coleman and Cole's appeal on August 2, 2006. On the same date, it set the motion for new trial for hearing on September 18, 2006.
On September 18, 2006, the trial court heard the motion for new trial. At that time, the court recognized its error in dismissing DeVan Pardue on a peremptory exception of no cause of action, as he had never filed such an exception. In an effort to rectify its error, the trial court orally ruled that the first combined judgment would be invalidated or annulled in its entirety, and the second combined judgment of July 26, 2006 would constitute the court's judgment. However, on September 28, 2006, the trial court signed a third combined judgment on the various exceptions and motions, essentially to the same effect as the second combined judgment. Coleman and Cole filed another petition for a devolutive appeal of the September 28, 2006 judgment on October 17, 2006, and the trial court signed an order granting that appeal on October 25, 2006.
Coleman and Cole appeal, contending that the trial court erred in (1) sustaining HCL's peremptory exception of no cause of action and dismissing it as a defendant; (2) sustaining Ms. Harris's peremptory exception of prescription and dismissing her as a defendant; and (3) sustaining Ms. George's peremptory exception of prescription and dismissing her as a defendant.

PRELIMINARY PROCEDURAL CONSIDERATIONS
The Judgment Appealed
It is first necessary for us to determine the judgment or judgments at issue in this appeal. Although all three of the trial court's judgments on the exceptions and motions are essentially similar, the first combined judgment provides for the dismissal of one additional defendant, DeVan Pardue. If that judgment remains valid, the issue of DeVan Pardue's continued status as a party necessarily will arise at some point, although not formally raised as an issue in this appeal.
Initially, the effect of the second combined judgment of July 26, 2006 on the first must be determined. We conclude it had no substantive effect on the final judgments on the peremptory exceptions, dismissing the four defendants, as the trial court had already signed the first judgment on the various exceptions and motions on July 17, 2006. See La. C.C.P. art. 1951 and Strawn v. Superfresh, 98-1624, p. 4 (La. App. 1st Cir. 9/24/99), 757 So.2d 686, 689.
An order of appeal is premature if granted before the court disposes of all timely filed motions for new trial. La. C.C.P. art. 2087(D). It becomes effective upon the denial of such motions. Id. The trial court obviously concluded that the plaintiffs motion for new trial, filed on July 31, 2006, was timely, thereby making the order of appeal signed on August 2, 2006 premature. But the motion for new trial was not timely; it was filed on July 31, 2006, ten days, exclusive of legal holidays, after the mailing of the notice of the July 17, 2006 judgment that same day. See La. C.C.P. art. 1974. Thus, upon the signing of the order of appeal on August 2, 2006, the trial court was divested of jurisdiction over the matters at issue, and had no authority to hear the motion for new trial or to issue the subsequent, third combined judgment of September 28, 2006. See La. C.C.P. art. 2088.[5] Its original, uncorrected judgment of July 17, 2006 is therefore the judgment before us in this appeal.
Before undertaking our review of the issues raised by this appeal, we will amend the combined judgment at issue to make the same correction valiantly attempted by the trial court, in order to achieve a just and proper result. That portion of the judgment, sustaining a nonexistent exception and dismissing a party without affording the opposing parties any meaningful opportunity to be heard on the issue, obviously is violative of due process and absolutely null. Accordingly, under the authority of La. C.C.P. art. 2164, we declare that judgment on the nonexistent exception dismissing DeVan Pardue as a defendant absolutely null and vacate it.[6] For the foregoing reasons, we further vacate the combined judgments of July 26, 2006 and September 28, 2006.

Standing of Appellants
The plaintiff, Jerome Winder, has not appealed the adverse judgments sustaining the exceptions and dismissing his claims against Ms. George, Ms. Harris, and HCL. May the other defendants, Coleman and Cole, properly appeal the judgments at issue? We conclude that they may, as they clearly have a justiciable interest in the resolution of the dispute as to the ownership of the contested property.[7] The validity of the succession proceedings and the sale of the property at issue bear upon the identity of the actual property owners against whom Coleman and Cole claim adverse possession or title. The object of an appeal is to give an aggrieved party recourse for the correction of a judgment. Mike M. Marcello, Inc. v. La. Gaming Control Bd., 04-0488, p. 4 (La. App. 1st Cir. 5/6/05), 903 So.2d 545, 547. This right extends not only to the parties to the action, but even to a third person when such a person is allegedly aggrieved by the judgment. Id. See also La. C.C.P. art. 2086. In our previous decision in the connected case instituted by Coleman and Cole, we expressly recognized the justiciable interest and right to intervene therein of the plaintiff, Jerome Winder. Here, the converse is equally true as to Coleman and Cole's right to appeal the judgments at issue, and the principle applies with more force due to the status of Coleman and Cole as parties.

Review of Judgments Overruling Exceptions
In his appellate brief, Hobart Pardue, as appellee, urges us to review the merits of each of his exceptions overruled by the trial court. In the first place, the judgments overruling those exceptions are interlocutory judgments and not appealable. See Fleniken v. Albritton, 566 So.2d 1106, 1111-12 (La. App. 2nd Cir. 1990) and La. C.C.P. arts. 1841 and 2083. In the second place, Mr. Pardue did not answer the present appeal, nor did he institute a separate appeal or a timely application for supervisory review. See La. C.C.P. arts. 2133(A), 2201. Thus, we have no jurisdiction to undertake the review he requests and cannot consider any issues dealing with those interlocutory judgments. See Bennett v. Arkansas Blue Cross Blue Shield, 05-1714, p. 5 (La. App. 1st Cir. 9/15/06), 943 So.2d 1124, 1127.

ANALYSIS

No Cause of Action
A trial court's judgment sustaining the peremptory exception of no cause of action is subject to de novo review by an appellate court, employing the same principles applicable to the trial court's determination of the exception. Stroscher v. Stroscher, 01-2769, p. 3 (La. App. 1st Cir. 2/14/03), 845 So.2d 518, 523.
The objection that a petition fails to state a cause of action is properly raised by the peremptory exception. La. C.C.P. art. 927(A)(4). The purpose of the peremptory exception of no cause of action is to determine the sufficiency in law of the petition, in terms of whether the law extends a remedy to anyone under the petition's factual allegations. Stroscher, 01-2769 at p. 3, 845 So.2d at 523. A "cause of action," as used in the context of the peremptory exception, means the operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1238 (La. 1993).
Generally, no evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. However, Louisiana jurisprudence recognizes an exception to this rule, whereby evidence admitted without objection may be considered by the court as enlarging the pleadings. Stroscher, 01-2769 at p. 3, 845 So.2d at 523. For purposes of determining the issues raised by a peremptory exception of no cause of action, the well-pleaded facts in the petition must be accepted as true, and the court must determine if the law affords the plaintiff a remedy under those facts. Id. Any doubts are resolved in favor of the sufficiency of the petition. Id. If a petition is based on several separate and distinct causes of action arising out of separate and distinct operative transactions or occurrences, or, in other words, involves two cumulated actions that could have been brought separately, the court may sustain an exception of no cause of action in part and dismiss one action, while leaving the other actions to be tried on the merits. Everything On Wheels Subaru, 616 So.2d at 1239.
According to its written reasons for judgment, the trial court determined that the petition failed to state any cause of action against HCL, reasoning that it failed to allege facts constituting fraud on the part of HCL and that its allegations relating to the nullity of the sales were only legal conclusions. Louisiana Civil Code article 1953 defines fraud as follows:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may result from silence or inaction.
Any circumstances constituting fraud must be alleged "with particularity." La. C.C.P. art. 856.
The plaintiff specifically characterized Ms. George and Janice Winder, one purported child of Charles Winder, Sr., as "false heirs" in his petition, and alleged that Ms. George was not an illegitimate descendant of William Winder, Sr., as she claimed to be.[8] The plaintiff also alleged that Hobart O. Pardue, Jr. served as Inez George's attorney in instituting the succession proceedings, long after the peremptive period for establishing her filiation under former La. C.C. art. 209 had expired, and that he and his son, DeVan Pardue, were law partners at all pertinent times. Plaintiff alleged that prior to the filing of the succession proceedings, the Pardues knew that a "world class" golf course and resort community was being built on the adjacent "Carter Plantation" property. Hobart Pardue was alleged to have notarized "incorrect" and "faulty" affidavits of death and heirship that were later refuted under oath by the purported affiants. One affiant was alleged to have effectually declared his signature a forgery in a sworn deposition, and both were said to have denied signing the respective affidavits in Hobart Pardue's presence. Both affiants testified that documents were simply presented to them for signing by Ms. George.[9]
The plaintiff also alleged that in the letter sent to the Charles Winder, Sr. heirs, following the private sale to his son, Hobart Pardue described the property at issue as being "cutover land with no merchantable timber" with "shacks" that were "basically uninhabitable," having a value of $1,000.00 per acre, when in fact the property was then and earlier worth much more than that sum. The detailed allegations of the petition were supplemented by voluminous exhibits attached to the petition, including the succession pleadings, a printed Internet document describing the grand opening of the Carter Plantation real estate development, and the depositions of the affiants disavowing their affidavits.[10] Finally, the plaintiff alleged that the described acts of the Pardues, George, and Harris constituted breaches of ethical and fiduciary duties owed to him, as well as "unfair and deceptive acts" within the meaning of the Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, et seq., entitling him to bring a private action for damages pursuant to La. R.S. 51:1409.[11]
Accepting the allegations of the petition as true, they are sufficient to state a cause of action for fraud and breach of fiduciary duties against Ms. George, Ms. Harris, and the Pardues, as well as an action for unfair and deceptive trade practices against the Pardues, based upon those defendants' knowing use of untrue, unswom, and possibly forged affidavits to promote the claim of at least one false heir to the successions at issue and to thereby deprive the legitimate heirs to the successions of a corresponding portion of their property. HCL's involvement in that broadly-described scheme is only implied, through allegations of its president's status as Hobart Pardue's wife and DeVan Pardue's mother and its corporate address as that of the Pardue Law Firm.[12] While we agree that the allegations are presently insufficient to state a cause of action in damages for fraud and deceptive practices against HCL, the trial court committed an abuse of its discretion and legal error in failing to allow the plaintiff to amend his petition to remove the grounds of the objection. See La. C.C.P. art. 934 and Ramey v. DeCaire, 03-1299, pp. 9-10 (La. 3/19/04), 869 So.2d 114, 119-20. We therefore affirm the judgment in part insofar as it sustains the exception of no cause of action relating to a cause of action for fraud or deceptive practices against HCL, but vacate the dismissal of the plaintiff's action against HCL and amend the judgment in part to provide that the plaintiff is ordered to amend his petition to state a cause of action for fraud or deceptive practices or another delictual cause of action against HCL within thirty days of the date of this decision, in default of which that cause of action against HCL shall be dismissed. This does not conclude our consideration of this procedural issue, however.
A petitory action is one brought by a person claiming the ownership of immovable property, but without possession of it, against another in possession or claiming adverse ownership, for the purpose of obtaining judgment recognizing the plaintiff's ownership. See La. C.C.P. art. 3651. A petitory action may be brought by a person who claims the ownership of only an undivided interest in the immovable property. La. C.C.P. art. 3652. Although the plaintiffs petition is not formally styled as one for a petitory action, its allegations and the relief sought sufficiently state a petitory action against HCL, Coleman, and Cole.[13] In filing their peremptory exceptions of nonjoinder of parties needed for just adjudication, contending that Coleman and Cole were such parties, Ms. George and DeVan Pardue explicitly recognized that the plaintiff was asserting a petitory action for a declaration of his ownership interest. In that respect, therefore, the trial court erred in sustaining the peremptory exception of no cause of action and dismissing HCL from the litigation. We accordingly reverse the judgment sustaining the exception in part, as to the petitory action directed against HCL as the purported current owner of the property at issue.

Prescription Under La. R.S. 9:5622 and La. C.C. Art. 3492[14]
In reviewing a peremptory exception raising the objection of prescription, appellate courts strictly construe the statutes against prescription and in favor of the claim that is said to be extinguished. Onstott v. Certified Capital Corp., 05-2548, p. 4 (La. App. 1st Cir. 11/3/06), 950 So.2d 744, 747.
The trial court ruled that any alleged cause of action against HCL was prescribed pursuant to La. R.S. 9:5622, establishing a two-year prescriptive period for claims of informalities of legal procedure relating to private sales of property. The trial court ruled that the plaintiff's cause of action against Inez George was prescribed under both La. R.S. 9:5622 and La. C.C. art. 3536. The language of La. R.S. 9:5622 relevant for our purposes reads as follows:

All informalities of legal procedure connected with or growing out of any sale at public auction or at private sale of real or personal property made by any sheriff of the Parishes of this State, licensed auctioneer, or other persons authorized by an order of the courts of this State, to sell at public auction or at private sale, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale . . . . (Emphasis supplied.)
This prescription is not appropriate in matters involving radical nullities, such as a sheriff's sale that is an absolute nullity. See Dileo v. Dileo, 217 La. 103, 110-11, 46 So.2d 53, 55-6 (La. 1950). In other words, prescription under La. R.S. 9:5622 "is intended to cure only relative nullities (informalities), . . . not absolute nullities (matters of substance) [that] go to the essence of the sale and affect the substantive rights of the parties with interest in the property sold." First Fed. Say. & Loan Ass'n of Winnfield v. Blake, 465 So.2d 914, 918 (La. App. 2nd Cir.), writ denied, 469 So.2d 984 (La. 1985), citing Bordelon v. Bordelon, 180 So.2d 855, 857 (La. App. 3rd Cir. 1965). This prescriptive period only benefits purchasers in good faith and is not available to purchasers in legal bad faith. Id.
The prescription established by La. R.S. 9:5622 cannot serve to defeat a cause of action to annul the fraudulent sale of immovable property or a petitory action, both of which plainly address the essential issue of ownership and the substantive rights of the involved parties. Thus, even subsequent third-party purchasers in good faith may not claim the benefit of prescription under La. R.S. 9:5622, absent proof at an evidentiary hearing that the sale was not subject to an absolute nullity. See Bordelon, 180 So.2d at 859. Neither HCL nor Ms. George is entitled to the benefit of La. R.S. 9:5622 given the pleadings and the evidence in the record.
It is well settled that a petitory action for the recovery of immovable property is imprescriptible. La. C.C. art. 3502, Revision Comments  1983, (c). For this reason alone, it was improper for the trial court to have sustained HCL's peremptory exception of prescription, at least as to the petitory action asserted. Additionally, it should be noted that an action for recovery of the whole or a part of a succession is subject to a liberative prescription of thirty years. La. C.C. art. 3502.
As to one-year delictual prescription under La. C.C. art. 3492, we note that the allegations of the plaintiff's petition state that the affiants to the two affidavits of death and heirship disavowed the content of their affidavits in depositions on December 2, 2004. The record of the prior action by Coleman and Cole, filed in evidence in this action, shows that the affiants previously executed affidavits to the same effect on September 2, 2004. The plaintiff, Mr. Winder, filed a motion to intervene in the prior action on that basis on November 4, 2004. The plaintiffs deposition, introduced into evidence at the hearing on the exceptions, is equivocal as to the exact date in late 2004 that the plaintiff first discovered or was informed of the alleged fraud as to the understated value of the property and the claimed false affidavits. Nevertheless, the evidence indicates that he instituted this action against Ms. George, the alleged false heir, well within one year of that date. Not having adequately refuted the application of contra non valentem, Ms. George did not meet her burden of proof of prescription under La. C.C. Art. 3492. See Paragon Dev. Group, Inc. v. Skeins, 96-2125 (La. App. 1st Cir. 9/19/97), 700 So.2d 1279. Neither did HCL.

Prescription Under La. R.S. 9:5621
The trial court sustained Ms. Harris's peremptory exception of prescription, concluding that the plaintiffs claims against her, as succession administrator of the William Winder, Sr. succession and the nine other related successions, was prescribed under La. R.S. 9:5621. That statute provides:
Actions against any person who has served as curator of a vacant succession or as administrator, testamentary executor, or dative testamentary executor of a succession in this state, or against the surety on his bond, arising out of any act the succession representative, as such, may have done or failed to do, are prescribed by two years, reckoning from the day of the judgment homologating the final account.
This prescription shall not be suspended or interrupted because of the incapacity of the person who might bring the action, reserving to him his recourse against his tutor or curator.
This prescription does not apply to actions for the recovery of any funds or other property misappropriated by the succession representative nor to actions for any amount not paid in accordance with the proposed payments shown on the final account.
A succession representative is a fiduciary with respect to the succession, must act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure to so act. See La. C.C.P. art. 3191. A succession representative has the duty to obtain the best price reasonably obtainable in a sale of a succession asset. Fuller v. Baggette, 36,952, p. 13 (La. App. 2nd Cir. 5/6/03), 847 So.2d 26, 34, writ denied, 03-2076 (La. 11/7/03), 857 So.2d 498. Actions based on breaches of fiduciary duties constitute personal actions that are subject to a liberative prescription of ten years under La. C.C. art. 3499. Id., 36,952 at p. 14, 847 So.2d at 34. We conclude that Ms. Harris failed to meet her burden of proof of prescription under La. R.S. 9:5621, given the pleadings and the evidence. The judgment sustaining her exception is reversed.

CONCLUSION
A court should resolve doubts about a peremptory exception by overruling the exception (or referring the exception to the merits) and affording the litigant his day in court. Woodlawn Park Ltd. P'ship v. Doster Constr. Co., Inc., 623 So.2d 645, 648 (La. 1993). In Teachers' Ret. Sys. of La. v. La. St. Employees' Ret. Sys., 456 So.2d 594, 597 (La. 1984), holding that all doubt as to a peremptory exception of no right of action should be resolved in favor of the plaintiff, the supreme court pointedly took note of the lack of additional evidence "which would contribute to a better understanding of the intentions of the parties concerning their relationships." It concluded that "[u]ntil those legal relationships are determined and the status of each of the parties to this series of complex financial arrangements established after presentation of all evidence, it would be precipitous to dismiss any of the parties." Id. (Emphasis supplied.) The same general reasoning applies to the present matter, with even more force. As we aptly observed in our opinion in the connected case, "[t]he irregularities are legion."[15] Considering the complicated nature of the underlying facts, the confused and confusing state of the pleadings, and the evidence presently in the record, we conclude that the pleadings and the evidence are insufficient to support the conclusion that the plaintiffs action was prescribed against HCL, Ms. George, or Ms. Harris. The trial court erred in concluding otherwise, and its judgments in that regard are reversed.
The judgment of the trial court is affirmed in part insofar as it sustained the peremptory exception of no cause of action of the defendant, HCL Enterprises, Inc., as to any cause of action for damages, but amended to vacate the dismissal of that defendant and to order the plaintiff, Jerome Winder, to supplement or amend his petition to state a cause of action for damages against the defendant, HCL Enterprises, Inc., within thirty days of the date of this opinion, in default of which any such cause of action against that defendant shall be dismissed. The judgment sustaining the peremptory exception of no cause of action of the defendant, HCL Enterprises, Inc., is reversed in part insofar as it relates to the petitory action against that defendant, and the judgment sustaining HCL Enterprises, Inc.'s peremptory exception of prescription is reversed. The judgments sustaining the peremptory exceptions of prescription of the defendants, Inez George and Elnora Harris, are reversed. Pursuant to the authority of La. C.C.P. art. 2164, the trial court's judgment sustaining the nonexistent peremptory exception of the defendant, DeVan Pardue, is declared an absolute nullity and is accordingly vacated. The trial court's judgments of July 26, 2006 and September 28, 2006 are also declared absolute nullities and vacated.
All costs of this appeal are assessed to the defendants, Inez George, Elnora Harris, and HCL Enterprises, Inc., in equal proportions.
AFFIRMED AND AMENDED IN PART, VACATED IN PART, REVERSED IN PART, AND REMANDED; JUDGMENTS OF JULY 26, 2006 AND SEPTEMBER 28, 2006 VACATED.

APPENDIX
MCDONALD, J.
Plaintiffs (Coleman and Cole) filed a petition for declaratory judgment against DeVan Pardue (Pardue) seeking to be declared owners of a disputed tract of land. After trial, the judge rendered judgment declaring the owner to be Pardue and his "title successors." Thereafter, Coleman and Cole filed a motion for a new trial, and Jerome Winder (Winder) and Horace Brumfield (Brumfield) filed motions to intervene, all of which were denied. Pardue filed a motion for sanctions against Coleman for noticing a deposition post-trial, which was granted.
Coleman and Cole appealed the original judgment awarding ownership of the property to Pardue and the subsequent judgment denying the motion for a new trial. Coleman appealed the judgment granting sanctions in the amount of $500.00 to Pardue. Winder appealed the denial of his motion to intervene. For the following reasons, the judgments of the trial court are reversed, and the matter is remanded for a new trial.
The property at issue in this matter is approximately seventeen acres located what was the Carter Plantation in the parish of Livingston, Louisiana. In 1895, Amanda Carter sold to William Winder seven and a half acres, "being a part of the Thomas Freeman tract." In July 1951, for valuable consideration acknowledged and to "carry out a legacy in favor of Annette Winder contained in the last will and testament of Lillie Carter", a number of Carter heirs transferred, assigned and delivered to Annette Winder a tract of land, purportedly 10 acres, described as follows:
A certain tract of land in the Parish of Livingston, State of Louisiana, in HR 46 T 7 SR 6E, particularly designated and described as commencing at the Northeast corner of the 7.50 acre Win. Winder estate tract of land in the Southeast portion of HR 46, and from said Northeast corner measure North 15.51 chs. to the South boundary line of a 100 acre tract; thence West 6.45 chs.; thence South 15.51 chs.; thence East 6.45 chs. To point of beginning; as per survey made by C. M. Moore, Surveyor, on May 18th, 1946.
Arnette Winder died and a judgment of possession in her succession was rendered May 5, 1961, delivering 1/5 of all of her property to her siblings, Olivia Winder Stewart, Netter Winder (Anita Winder Goldstein), Bertha Winder Kelly and William Winder, Jr., and 1/10 each to Charles Winder and Lionel Winder, sons of her deceased brother, Eric. The immovable property in the succession of Annette Winder were two tracts of land, one described as above and additionally indicating that it was "acquired by decedent as per act recorded in COB 74, page entry 16,303, of the records of Livingston Parish." The other tract of land was:
"an undivided interest inherited by decedent in her father's estate, described as [A]nother tract of land in the Parish of Livingston, Sate of Louisiana, designated and described as being a part of the Thomas Freeman tract owned by Mrs. Amanda Carter and known as a five acre lot, formerly surveyed by W.B. Rownd, in about 1893; and an additional 21/2 acres on the East side of said lot; said property being located in the Southeast corner of Thomas Freeman HR No. 46 T 7 SR 6 E, in said Parish and State; acquired by Wm. Winder as per act recorded in conveyance book 48, page 117, of the records of Livingston Parish."
Prior to the 1961 judgment of possession in the succession of Arnette Winder, there were no successions opened by any members of the Winder family. William Winder, Jr., the last living of Arnette's siblings, died in 1986.
In 1988, Coleman and Cole acquired from Carter Heirs, Inc., and took possession of, two tracts of land. The portion of that land designated as tract 3 allegedly included the 17.5 acres owned by the Winders. On the same day of the acquisition of the property, Coleman and Cole granted a life time right of habitation and occupancy to Horace and Idella Brumfield and their children to the residence occupied by the Brumfields and to approximately five acres surrounding the residence. The document memorializing this agreement was filed in the Livingston Parish conveyance records.
In the late 1990's, Jerome Winder demanded that Brumfield pay rent to live in the house that Coleman and Cole had given his family the right to inhabit. Inez George, an allegedly illegitimate granddaughter of William Winder, Sr., also attempted to remove Brumfield, who ultimately refused the demands to pay rent. Inez George sought legal advice from Hobart O. Pardue, Pardue's father. Thereafter, with Hobart Pardue as legal counsel, a succession was opened for William Winder, Sr. and the judgment of possession in the succession of Arnette Winder was amended to include Inez George as an heir.
In August 1998, Elnora Harris, Inez George's daughter and administratrix of the succession of William Winder, Sr., agreed to sell the property owned by the Winders to Pardue. A cash deed for the sale of two tracts of property from the Estate of William Winder to DeVan Pardue was passed before Hobart O. Pardue, Jr. on February 26, 1999. The property description recited "A certain tract of land in the Parish of Livingston..." and continued with the same description of the property acquired by Arnette Winder from the Carters, including the language on the recordation. The second parcel of Winder property, which was that originally acquired by William Winder, Sr., had the same description as that recited in the judgment of possession in Arnette Winder's succession.
After obtaining purported title to the property, Pardue filed an eviction proceeding in the Justice of Peace Court for Ward Six of Livingston Parish against Brumfield, which was subsequently transferred to the Twenty-first Judicial District Court, and the petition was amended in June 2002. On July 24, 2003, Pardue sold the subject property to HCL Enterprises, Inc.
On July 25, 2003, Coleman and Cole filed the petition for declaratory judgment in this matter, alleging that they purchased immovable property on November 16, 1988, referred to as the "Winder Tract" and described as follows:
Tract 3
Beginning at the corner common to Sections 25, 26 and 46, T7S, R6E, Parish of Livingston, State of Louisiana, thence East 667.89 feet; thence North 13 deg. 27 min. 16 sec. West 1840.33 feet; thence East 425.70 feet; thence South 13 deg. 27 min. 16 sec. East 1840.33 feet; thence East 1130.61 feet; thence South 25 deg. 55 min. 44 sec. East 577.95 feet; thence West 2641.20 feet; thence North 00 deg. 15 min. 00 sec. East 402.00 feet back to the Point of Beginning. Said tract containing 39.94 acres.
All as shown on that certain survey by Wallace Adams Engineering Company #2368 dated November 10, 1988, a copy of said map being of record in the Office of the Clerk of Court, Parish of Livingston, State of Louisiana.
Plaintiffs alleged that they were in possession of the property, as evidenced by various acts of ownership; that Pardue claimed to have acquired ownership from the Succession of William Winder et al; and that Pardue did not receive ownership of the "Winder Tract" because the Estate of William Winder was not the owner of the "Winder Tract." They prayed for judgment declaring them to be the owners of the Winder Tract. In October 2003, Coleman and Cole amended their original petition to put at issue before the court only a portion of the Winder Tract described as follows:
Commencing at the corner common to Sec. 25, 26 & 46, T7S, R6E of Livingston Parish, State of Louisiana, thence E 667.89' East of the Point of Beginning, proceed thence East 425.70' thence, North 712degree27' 16" West 1840.99'; thence West 425.70' thence South 13degree27'16" east 1840.33' too the Point of Beginning.
The matter was tried on August 11, 2004. Written reasons were assigned, and judgment was rendered on October 20, 2004, dismissing the claims of Coleman and Cole. The judgment declared that Pardue was the owner of the following described immovable property:
Commencing at the corner common to Sec. 25, 26 & 46, T7S, R6E of Livingston Parish, State of Louisiana, thence E 667.89' to true point of beginning; thence from said point of beginning continue East 425.70' feet and corner; thence, North 13 degrees 27 minutes 16 seconds West 1840.33 feet and corner; thence West 425.70' thence South 13 degrees 27 minutes 16 seconds East 1840.33 feet to true point of beginning, being the northern portion of Tract 3 as per survey of Wallace L. Adams, R.P.C.E. and R.P.L.S. dated 11-10-88 and revised 11-30-88 and filed in these proceedings as Plaintiff's Exhibit 4.
Coleman and Cole then timely filed a motion for new trial and peremptory exception for non joinder of indispensable party. The motion alleged that since the trial, the plaintiffs discovered that Inez George was not an heir; that indispensable parties, Horace Brumfield, Jerome Winder and Danny Winder, were not included in the trial; that HCL Enterprises was an indispensable party in that HCL Enterprises was the proper party to assert ownership and not Devan Pardue; and that plaintiffs were entitled to a new trial. As noted, the trial court denied these motions, and this appeal was lodged.
We have carefully reviewed the entire record in this proceeding with considerable consternation. The irregularities are legion. We trust that these matters will be thoroughly investigated and fairly adjudicated in the appropriate forum and time. However, on the issues properly before us, we find as follows.
Coleman and Cole filed a petition for declaratory judgment pursuant to La. C.C.P. art. 3654. Louisiana Code of Civil Procedure article 3654 provides that a person who is in possession of immovable property may institute an action for declaratory judgment for the recognition of his ownership against a person who claims ownership of the same property. Mt. Everett African Methodist Episcopal Church v. Carter, 96,2591 (La. App. 1st Cir. 12/29/97), 705 So. 2d 1179, 1181. Under the provisions of La. C.C.P. art. 3654, the first issue that must be determined is the question of current possession. Possession determines who has the burden of proof When one party claims possession of one year to the exclusion of the other party and the court finds as a matter of fact that one party had possession, the second party pleads his title. Then the burden shifts to the one pleading title to make out his title good against the world. Id.
In this case, in order for Pardue to be declared the owner of the property, he would have had to prove his title good against the world. Pardue did not, and could not, meet this burden of proof. At the time of trial, Pardue was not the owner of the property, HCL Enterprises, Inc. was.
Louisiana Code of Civil Procedure article 641 addresses the joinder of parties needed for just adjudication, and provides as follows:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
This issue may be brought before the trial court by a party filing a peremptory exception raising the objection of nonjoinder of a party in accordance with La. C.C.P. art. 927 A (3). Nonjoinder of a party may also be noticed by either the trial court or appellate court on its own motion. La. C.C.P. art. 927.
Considering the above, we find that parties necessary for a just adjudication of the ownership of the property[1] must be joined. On the record before us, we find that Pardue did not meet his burden of proof and HCL Enterprises, Inc. must be joined as a party for just adjudication in this matter. In the interest of judicial efficiency and justice, the validity of the claims of Winder set forth in the matter entitled Jerome Winder versus Inez George, et al, Docket Number 106,641, Division G, Twenty-First Judicial District Court should be determined before further adjudication of this property, or Winder should be allowed to intervene in this proceeding.
The judgment of the trial court dated October 20, 2004, decreeing ownership of the subject property, is reversed, and the matter is remanded for a new trial. The judgment of the trial court dated October 21, 2005, granting sanctions in the amount of $500.00 to DeVan Pardue is reversed, and that matter is dismissed. Costs are assessed half to plaintiffs and half to defendant.
REVERSED AND REMANDED.
McCLENDON, J., concurs and assigns reasons.
I respectfully concur with the result reached by the majority. However, in this case, as to the dates of commencement of the prescriptive period applicable to the alleged delictual actions, I would have referred those to the merits.
NOTES
[1] The preamble of the act of sale identified Hobart Pardue as the notary before whom the act was passed, but the notary's signature appears to read "A. B. Pardue" and bears no resemblance to Mr. Pardue's signatures on pleadings and correspondence in the record.
[2] See Coleman v. Pardue, 2005 CA 1071 (La. App. 1st Cir. 6/21/06) (unpublished opinion). A copy of our decision in that case is attached as an appendix to this opinion. As the trial court correctly observed in its written reasons for judgment in this action, in order to properly understand these proceedings, an understanding of the connected case is necessary, as the underlying dispute first arose therein.
[3] Prior to the hearing, the plaintiff filed an amended petition adding Coleman and Cole as additional defendants.
[4] For an example of the procedural disarray in this litigation, one need look no further than the confusion resulting from the submission of the conflicting judgments submitted by opposing counsel to the trial court, evidently without compliance with La. C.C.P. art. 1916(B) and La. Dist. Ct. R. 9.5. See our discussion, infra.
[5] Similarly, the subsequent motion and order of appeal from the September 28, 2006 judgment have no legal effect.
[6] We are authorized and, indeed, required to render a judgment "which is just, legal, and proper upon the record on appeal." La. C.C.P. art. 2164; Jackson Nat'l Life Ins. Co. V. Kennedy-Fagan, 03-0054, p. 5 (La. App. 1st Cir. 2/6/04), 873 So.2d 44, 48, writ denied, 04-0600 (La. 4/23/04), 870 So.2d 307. The purpose of La. C.C.P. art. 2164 is to give an appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below. Id., 03-0054 at p. 8 n.6, 873 So.2d at 50 n.6. Cf. La. C.C.P. art. 2006. If a judgment is relatively null, it can only be attacked by a direct action in the court of rendition. Pittman v. George, 424 So.2d 1200, 1201 n. 1 (La. App. 1st Cir. 1982).
[7] Although not raised by the parties, we address this issue because it relates to our jurisdiction of the controversy. A "justiciable interest" is defined as "the right of a party to seek redress or a remedy against either [the] plaintiff or defendant in the original action or both, and where those parties have a real interest in opposing it." In re Succession of Walker, 02-625, p. 6 (La. App. 5th Cir. 12/11/02), 836 So.2d 274, 277, writ denied, 03-0110 (La. 3/28/03), 840 So.2d 572. The right, if it exists, must be so related to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the rights of the party or intervenor asserting the justiciable interest. Id.
[8] In his petition, the plaintiff alleged that Janice Winder, a child of Charles Winder, Sr. named in the original affidavit of death and heirship, did not actually exist.
[9] Copies of the affiants' depositions were attached as exhibits to the petition.
[10] The Internet document stated that the Carter Plantation real estate development celebrated its grand opening on April 26, 2004, " faifter more than six years of planning and development" (Emphasis supplied.) This would date the initial planning of the real estate development to early 1998, months prior to the institution of the succession proceedings by Ms. Harris and Ms. George. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes. La. C.C.P. art. 853. Thus, for purposes of determining the peremptory exception of no cause of action, the content of the annexed exhibits must also be considered as true.
[11] What constitutes an unfair trade practice under La. R.S. 51:1401, et seq., is determined by the courts on a case-by-case basis. Copeland v. Treasure Chest Casino, L.L.C., 01-1122, p. 4 (La. App. 1st Cir. 6/21/02), 822 So.2d 68, 71. However, it is well settled that a practice is considered unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers or business competitors. Id. Fraud, deceit, and misrepresentation constitute deceptive practices. Dixie Say. & Loan Ass'n v. Pitre, 99-154, p. 21 (La. App. 5th Cir. 7/27/99), 751 So.2d 911, 923, writ denied, 99-2867 (La. 12/10/99), 751 So.2d 855.
[12] DeVan Pardue is also alleged to be HCL's registered agent for service of process since it was incorporated in 2000.
[13] Not having affirmatively alleged possession of the property, the plaintiff's action may not be considered a possessory action. See La. C.C.P. art. 3658.
[14] The trial court's judgment referred to one-year prescription under "La. C.C. art. 3536" as an additional basis for its ruling in favor of Ms. George and HCL on the issue of prescription. The version of La. C.C. art. 3536 in effect since January 1, 1992 does not address any type of liberative prescription, but rather conflict of laws relating to real rights in corporeal movables. This was an inadvertent error, as the trial court's reasons obviously referred to the substance of present La. C.C. art. 3492, which was contained in former La. C.C. art. 3536(1) until January 1, 1984.
[15] In reversing the trial court's judgment and remanding the prior connected case, we suggested that the validity of the plaintiff's claims in the present action should be determined before further adjudication of ownership of the property in that connected case. If the connected case is still active, we would also strongly suggest that these cases should appropriately be consolidated for trial.
[1] Further, the trial court must have sufficient legal description and evidence to establish the identity of the property being adjudicated.